Ckabb, J.
Were this a new question, I should be unprepared to say, what I now feel it my duty to determine, in deference to irresistible authority. Great difficulty would be experienced, by me, in arriving at the conclusion, which has now generally obtained, as to the proper interpretation of the constitutional and commonlaw provision, “tbatno person shall, for the same offence, be twice put in jeopardy of life or limb.”
According to the common acceptation of the expression, an individual would certainly be put in jeopardy, or, in other words, in danger, when arraigned before the proper tribunal, placed upon his trial, and a jury actually sworn to pronounce upon his innocence or guilt. But for a long course of judicial opinion to the contrary, I should be at a loss to attach a different meaning to the expression, and might feel myself bound to hold, that a second jury cannot be empannelled to try a citizen for a felony, after he has been once jeopardised or endangered, by a submission of his cause to a competent court and a jury, upon a valid indictment. A fern’, that the power in question, would sometimes be exercised, for the purposes of oppression and per *280 secution, would make me hesitate long before I could con* sent to abandon a construction, which would seem to be most consonant with the meaning of the words, and withal, most favorable to.life and liberty. (1 Haywood’s Rep. 241.) I should not be prepared readily to submit to a different interpretation, for any thing to be found in the English books; although they clearly, and upon the authority of numerous precedents, sanction the discharge of a jury for sufficient cause, and the empannelling of a second one. The older English books and cases, are all referred to, and reviewed' in the case of the two Kenlocks; (Foster’s Rep. 22) and the modern ones, are attentively examined in some of the American books to be referred to below.
The prevalent, the settled interpretation in England, of the principle or provision before alluded to, now is, that a man shall not be put upon his trial a second time after he has been once tried by a competent court, upon a valid indictment, and acquitted. The acquittal, however, according to the most modern authorities, I take to include the case of an illegal discharge of the jury — in which case the defendant is virtually acquitted, and is entitled to be also discharged.
In the United States I find a weight of coincident adjudication, which I cannot, I believe, with propriety resist. The supreme court of Massachusetts, the supreme court of New York, and above all, the supreme court of the United States, fitted mo.re than any other tribunal, from the necessary habits and researches of its members, to decide upon American constitutional law, -have, without, so far as I can discover, a dissenting voice, all held, that a court, in the exercise of a sound discretion, may discharge a jury, even in a capital case; and that the defendant may be again tried. Commonwealth vs. Boyden, (9 Mass. Rep. 494;)People vs. Olcot, (2 Johnson’s Cases 301;) Same vs. Goodwin, (18 John. Rep. 187;) United States vs. Perez, (9 Wheaton’s Rep. 579.)
In Goodwin’s case, Ch. J. Spencer, delivering the unanimous opinion of the court, says, “that although the power of discharging a jury is a delicate and highly important *281 ’trust, yet it does exist' in cases of extreme and absolute ne> cessity; and it may be exercised without operating as an acquittal of the defendant; it extends as well to felonies as misdemeanors; and it exists and may be exercised in cases where the jury, from the length of time they have been considering a cause, and their inability to agree, may be fairly presumed as never likely to be overcome, unless compelled to do so, from the pressing calls of famine or bodily exhaustion.”
In Perez’ case the supreme court of the United States say, “we are of opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted nor acquitted, and may again be put upon his defence. We think that, in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice otherwise would be defeated. They are to exercise a sound discretion on the subject — and it would be impossible to define all the circumstances which would render it proper to interfere. To be sure the power ought to he used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But after all, they have the right to order the discharge, &c.”
Cases may be supposed, where a court would act very improperly in discharging a jury: several are to be found in the English hooks; and I concur entirely with the supreme court of New York, in considering it as one instance of an abuse of the power, where a juror was withdrawn, because the public prosecutor was not prepared with his proofs. (18 John. Rep. 206; 2 Caines’Rep. 304.)
The presumption in this, as in all other cases, is, that the judge performs his duty. If it clearly appears to this court, however, from a bill of exceptions taken at the time of discharging the jury, that the discretion of the judge was improperly exercised, the power and duty are devolved *282 upon us of revising the proceedings of the inferior court; we must say that such discharge was tantamount to an acquitted, and that under such circumstances, a defendant should be discharged.
In the case before us, no exception was taken by the defendant; nor can we see any thing authorizing us to conclude, that there was an illegal exercise of the conceded discretion.
It is the opinion of the court, that the judgment of the circuit court, discharging the defendant at the subsequent term, on the mere ground of a discharge of the jury at a prior term, be reversed; and that the defendant enter into a recognizance for his appearance at the circuit court, to be tried upon the issue joined.
Catron, J.
I have been myself relieved in this cause from much examination and labor, for the reason, that the question to be decided, is not before the court for the first time, since I have been a member thereof. It arose, and was a principal question in the State against Bob, a negro slave, heard at Sparta last term. Bob had been charged, under the acts of assembly, before justices of the peace for White county, with the murder of Hannah Shadam, and her child; a jury was empannelled, and the proofs in the cause submitted to its examination, which jury disagreed; and, after afair trial to come to a verdict, and a failure, amis-trial was ordered by the justices, contrary to the consent of the prisoner. It was then moved that he be discharged, which was also refused; the defendant was tried a second timé and found guilty. The cause was brought to the supreme court, at the August term, 1826 — at which time the point did not arise, the court only ordering the circuit court to issue a certiorari to bring the cause to that court, and proceed upon the same according to law.
In that court it was moved, that the finding of the jury on the second trial, and the judgment of death thereon, be quashed, and the defendant discharged. The whole proceeding before the justices was quashed by the circuit court, and the defendant indicted at common law, tried, found *283 guilty, and sentenced; from which he took his writ of error to the supreme court, where the cause was heard at August term, 1826. This court quashed the proceedings, of the circuit court, upon the common law indictment, as not having been warranted by our statutes; and then it was again moved, that the defendant be discharged, because he had been once put in jeopardy, by the submission of his cause to the jury, which disagreed. The question was brought directly before the court, who did not doubt, but that it was bound to discharge the defendant, although a slave, if the principle was without exception, that a mistrial was equivalent to an acquittal.
Knowing the cause would come before the court at the term of 1826, the question was examined by me, through the whole range of British and American authorities, before the court came on. The principle, that the defendant could not be put upon his trial a second time, after the first jury had been discharged upon disagreement, had generally, not to say uniformly, obtained in the circuit courts in capital cases in this state, so far as they came within my knowledge. My opinions of the English common law, and the constitutions of the United States and our own state, were on the side of the construction adopted by the circuit courts; such was also, the opinion of judge Haywood, whose experience and learning upon the subject was great, and entitled to very high respect.
After, however, giving the matter every consideration, that its great importance entitled it to, judge Haywood and myself were compelled to give way to the weight of the American authorities, cited by judge Crabb, particularly to that of the supreme court of the United States, in the casefc of Perez, where the clause of the constitution of the United States, “that no man shall be twice put in jeopardy of life or limb, for the same offence,” received a - construction, which, upon that instrument, is binding authority upon the state courts.
That the provision in the constitution of the United, States, is binding entirely upon all the state courts in the* union, and secures the privilege of not being twice put in *284 to every citizen of every state, notwithstanding the state constitution may have no such provision, cannot be denied. It is the paramount law of every state, over ^le constitution and laws of the states; and although our own constitution has a similar provision, we did not feel ourselves warranted in giving it a construction different from that given to the constitution of the United States, by the tribunal possessing the power, (and of pre-eminent qualifications) to fix the construction of that instrument. We, therefore, followed that decision, and ordered the defendant •to be again put upon his trial, before the justices who first submitted his cause to the jury which disagreed.
Judge Whyte had been of the opinion, when the cause was first taken up in 1825, that the defendant could again be put upon his trial, notwithstanding the discharge of the former jury. Judge Haywood and myself concurred with him. Judge Peck was confined by sickness and absent from court.
I have no doubt, that the discretion of discharging a jury, in a capital case, by the circuit court, is the most de-jlicateduty that court has to perform, and should be exer-f cised with all possible caution; that its exercise is subject to the revision of this court; and that where the power shall be in any degree mistaken or abused, the defendant ought to be discharged.
For as much as the cause of the State vs. Bob, is not reported, and if reported, there are no reasons given in the opinion, why it differs from the well known prepossessions .and arguments of counsel, of judge Haywood and myself, upon the point decided, I have thought it necessary to say thus much in explanation.
Whyte, J. concurred.
Peck, I. dissented.
Judgment reversed.